UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CINDY P.,[1] | ) |
|                 Plaintiff, | ) No. 23 CV 349 |
| v. | ) Magistrate Judge Young B. Kim |
| FRANK BISIGNANO, Commissioner of Social Security, | ) |
|                 Defendant. | ) November 17, 2025 |

**MEMORANDUM OPINION and ORDER**

Cindy P. seeks disability benefits asserting that she is disabled by degenerative disc disease of the cervical, thoracic, and lumbar spine, anxiety, and depression. She brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for benefits. For the following reasons, Cindy's remand request is denied:

**Procedural History**

Cindy filed a benefits application in December 2016 claiming disability onset on March 15, 2015. (Administrative Record ("A.R.") 68.) After her application was denied at the administrative level, she sought and was granted a hearing before an Administrative Law Judge ("ALJ") at which she, a medical expert, and a vocational expert ("VE") testified. (Id.) The ALJ concluded on October 17, 2019, that while Cindy suffered from severe impairments of degenerative disc disease of the cervical,

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Cindy's first name and last initial in this opinion to protect her privacy to the extent possible.

thoracic, and lumbar spine and non-severe mental impairments of depression and anxiety, she is not disabled because she could perform her past relevant work. (Id. at 68-77.) Cindy appealed that decision in federal court, without success. *See Cindy P. v. Kijakazi*, No. 20 CV 6708 (N.D. Ill., Valdez, M.J.).

Cindy then filed another benefits application in January 2021 claiming disability as of October 18, 2019—the day after the ALJ denied her first application. (A.R. 163-64.) Her second application pertains to the period from her new onset date through December 31, 2019, her date last insured. The Commissioner denied this second application at the administrative level. (Id. at 83-108.) In January 2022 Cindy appeared with her attorney for a hearing before a new ALJ during which she and a VE testified. (Id. at 30-64.) The new ALJ also found Cindy not disabled. (Id. at 14-25.) After the Appeals Council denied Cindy's request for review, (id. at 1-7), she sought judicial review, and the parties consented to this court's jurisdiction, 28 U.S.C. § 636(c); (R. 7).

## Analysis

Cindy argues that the ALJ erred by: (1) not providing support for his residual functional capacity ("RFC") assessment finding her capable of using her hands frequently; (2) incorrectly assessing the level of her anxiety and depression and failing to include non-exertional limitations in her RFC; and (3) finding she could perform her past work at step four. (See generally R. 15, Pl.'s Mem.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and the decision has the support of substantial evidence, *Burmester v.*

2

*Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). However, the ALJ's "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations," *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021), and "provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow [the] reviewing court[ ] to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review,'" *Warnell v. O'Malley*, 97 F.4th 1050, 1054 (7th Cir. 2024) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). Viewing the record under this standard, remand is not warranted here.

**A. Physical RFC**

Cindy argues that the ALJ failed to support his RFC assessment that she can engage in frequent fine and gross manipulation. (R. 15, Pl.'s Mem. at 12-13.) An RFC measures the tasks a person can perform given her limitations based on "all the relevant evidence" in the administrative record. 20 C.F.R. § 404.1545(a)(1); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). When developing the RFC, the ALJ must incorporate a claimant's limitations, including those that are not severe, and may not dismiss a line of evidence that is contrary to the ruling. *Bruno*

3

*v. Saul*, 817 Fed. Appx. 238, 242 (7th Cir. 2020). In so doing, the ALJ must "say enough to enable review of whether [he] considered the totality of a claimant's limitations," *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022), providing a "logical bridge" between the evidence and his conclusions, *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021).

The ALJ here found Cindy capable of sedentary work except, among other limitations, "[s]he can stand and/or walk no more than one hour at a time. She can frequently reach overhead bilaterally and can frequently handle, finger, and feel bilaterally." (A.R. 19.) As to the limitation allowing frequent use of her hands, she says the ALJ "failed to offer any explanation" for rejecting her primary care provider Dr. Deborah Grandinetti's assessment that she could use her hands for fine and gross manipulation only 10% of the day. (R. 15, Pl.'s Mem. at 12-13 (citing A.R. 76, 312-15).) Cindy accuses the ALJ of "playing doctor" and harboring "an apparent commitment to avoiding a finding of disability," noting the VE's testimony that a limitation to even occasional handling and fingering would be work-preclusive. (Id. at 13 (citing A.R. 62).) The court disagrees.

An ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must assess the persuasiveness of all medical opinions by considering and explaining the most important factors—supportability and consistency. 20 C.F.R. §§ 404.1520c, 416.920c(b)(2); *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). The supportability factor requires consideration of the objective

4

medical evidence and explanations presented and used by the medical source. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor directs the ALJ to consider and explain how the opinion is consistent with all other medical and non-medical sources. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ also may, but is not required to, explain how he considered the medical source's specializations, their relationship with the claimant, and any other factors that tend to support or contradict the source's opinion. 20 C.F.R. §§ 404.1520c, 416.920c(b)(2).

The ALJ here properly considered both supportability and consistency when concluding that Dr. Grandinetti's opinion in large part "fell on the very substantial side" and was only partially persuasive. (A.R. 23-24.) The ALJ noted that Dr. Grandinetti's extreme opinions—including that Cindy is capable of lifting and carrying only less than five pounds, can do so only occasionally, and must take "substantial unscheduled breaks" with "three hours lying down"—are not supported by her own treatment notes and do "not specifically explain much of the limitations" imposed. (Id.) The ALJ pointed out that Cindy's physical examinations generally reflect "full strength and sensation" overall, (id. at 21), no complaints of tingling or numbness in her hands throughout the relevant period, (id. at 22), and "significant reductions in [upper] extremity strength" occurring only more than 12 months before the alleged onset date or more than 12 months after the date last insured, when the records still reflect a strength rating of 4 out of 5, (id.). The ALJ concluded that the issues Cindy experienced with her hands did not warrant limitations greater than those assessed. (Id.) In short, the burden remains with the claimant at the RFC

5

stage, and aside from Dr. Grandinetti's opinion—which the ALJ appropriately discounted—the court finds no support for the extensive hand-use restriction she now seeks.

**B.     Mental Deficits**

Cindy next complains that the ALJ: (1) erred at step two when finding that her depression and anxiety are not medically determinable impairments, but if they are, they are non-severe; and (2) failed to incorporate non-exertional limits into her RFC to accommodate the combined impact of her mental and physical conditions. (R. 15, Pl.'s Mem. at 7-9.) At step two an ALJ first considers whether a claimant has at least one "medically determinable" impairment, resulting from "anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques" and "established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. The ALJ then considers whether the medically determinable impairment is "severe"—meaning more than "slight," *Colson v. Calvin*, 120 F. Supp. 3d 778, 788 (N.D. Ill. 2015)—either alone or in combination with others, 20 C.F.R. § 404.1521(c). To assess the severity of a medically determinable mental impairment, the ALJ examines the claimant's limitations across four broad functional areas referred to as the paragraph B criteria. 20 C.F.R. § 404.1520a. Even when an ALJ concludes that an impairment is not severe, the ALJ must consider the combined effects of that and all other medically determinable impairments in proceeding through the disability analysis and assessing the RFC. 20 C.F.R. §§ 404.1520(a)(4), 404.1523(c).

6

This case is unusual because it concerns a period of only 10 weeks immediately following the first non-disability finding—from disability onset on October 18, 2019, through date last insured on December 31, 2019. Although the ALJ acknowledged that the previous ALJ found that Cindy suffers from non-severe anxiety and depression, the new ALJ declined to conclude the same for the relevant period in this case. (A.R. 16-17.) The ALJ flags that Cindy alleges no mental impairments in her application and the record for the relevant period fails to show any. (Id.) And contrary to Cindy's reports of experiencing more anxiety and depression beginning in 2021, the ALJ notes that the record reflects "rather consistent denials of psychiatric symptoms," and aside from a Xanax prescription, no "ongoing medical treatment" for the same. (Id.) The ALJ thus found that "while the greater longitudinal record may reflect a history of mental medically determinable impairments, even according [Cindy] every benefit of the doubt," the evidence "simply does not reflect that [Cindy] had a mental medically determinable impairment" during or after the relevant period that is "supported by at least some objective medical evidence from an acceptable medical source." (Id.)

Cindy criticizes this analysis, but it does not warrant remand. To be sure, while the bar to establish the existence of a medically determinable impairment is low, a diagnosis or medication prescribed to treat an impairment is not enough.[2] *See* 20 C.F.R. § 404.1521 (noting the SSA will not "use [the claimant's] . . . diagnosis

---

[2] For that reason, it does not matter that the ALJ states that Cindy had been prescribed Xanax since "at least February 2020," even though she had been taking it before and throughout the relevant period. (See R. 15, Pl.'s Mem. at 8.)

7

to establish the existence" of a medically determinable impairment); *Hopson v. Comm'r of Soc. Sec.*, 579 F. Supp. 3d 501, 514 (S.D.N.Y. 2022) (holding that medication "is not itself a 'clinical and laboratory diagnostic technique' for assessing the existence of an impairment"). And Cindy does not and cannot claim the ALJ had other objective evidence to go on. While Cindy complains that the ALJ relied on normal mental status exams ("MSEs")—which she notes the Seventh Circuit has cautioned against placing too much stock in, (R. 15, Pl.'s Mem. at 8)—the ALJ here relied on more than normal MSEs, and in any case it was Cindy's burden to show that her anxiety and depression are medically determinable, *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).

Cindy also challenges the ALJ's finding that she is only mildly limited in each of the four broad paragraph B functional areas, arguing it was without "a single word of explanation." (R. 15, Pl.'s Mem. at 7 & 9.) But having determined that Cindy did not suffer from a medically determinable mental impairment, the ALJ need not further consider Cindy's alleged depression and anxiety or address the paragraph B criteria. *See* 20 C.F.R. § 404.1520a(b)(1)-(2) (describing evaluation process for medically determinable impairments only). Moreover, even if the ALJ should have conducted a more fulsome paragraph B analysis, the court can trace the ALJ's path of reasoning in finding that Cindy suffered "no more than mild" paragraph B limitations. (A.R. 17-18 (noting Cindy's "consistent denials of psychiatric symptoms such as depression and anxiety," lack of treatment, normal mood, affect, and judgment, and absence of mental impairments reported in her disability benefits

8

application).) There being no evidence that the ALJ missed, the court is confident the ALJ would not attribute additional mental limitations based on Cindy's alleged depression or anxiety on remand. *See Rinaldi-Mishka v. Astrue*, Case No. 12 CV 1305, 2013 WL 3566844, at *15 (N.D. Ill. July 8, 2013) (finding any error in paragraph B analysis harmless given claimant's reliance "on the conclusory nature of the ALJ's determination" and "failure to point to any missing evidence" (citing *Pepper*, 712 F.3d at 366)).

Finally, Cindy argues that the ALJ failed to address the combined impact of her mental and physical impairments through non-exertional limitations in her RFC. (R. 15, Pl.'s Mem. at 9-12.) Cindy points to Dr. Grandinetti's January 2022 opinions finding that her anxiety and depression support functional limitations for concentration and focus and pain symptoms, which affect her ability to stay on task, maintain regular attendance, and require frequent breaks, including needing to lie down for three hours each workday. (Id. at 11-12 (citing A.R. 312-15).) But as discussed, other than Cindy's own reports, the record neither reflects issues with Cindy's mental conditions nor documents any issues with her concentration or focus during the relevant period. Moreover, the RFC includes substantial exertional restrictions to account for Cindy's pain, (A.R. 19), and the ALJ determined that Dr. Grandinetti's opinion about needing to take breaks and lie down, among other things, is neither supported nor explained, (id. at 24). While Cindy disagrees with the ALJ's assessment, the court may not reweigh the evidence.

9

**C.     Step Four**

Lastly, Cindy argues that the ALJ erred at step four in finding she could return to her past relevant work as an administrative clerk.  (R. 15, Pl.'s Mem. at 13-15.)  When assessing whether a claimant is capable of past work, the ALJ compares the "specific findings of fact as to the claimant's RFC" and the "physical and mental demands of the claimant's past job."  *Robertson v. Berryhill*, No. 17 CV 4034, 2018 WL 11088455, at *6 (N.D. Ill. Aug. 24, 2018) (quoting *Strocchia v. Astrue*, No. 08 CV 2017, 2009 WL 2992549, at *18 (N.D. Ill. Sept. 16, 2009) (internal citation omitted));  *see also* SSR 82-62, 1982 WL 31386 (1982).  But it is the claimant's burden to demonstrate that she cannot return to past work.  *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) ("[C]laimant bears the burden of proof at steps one through four.").

Cindy argues the ALJ: (1) failed to compare the demands of her past work with her RFC as required by SSR 96-8p; (2) found without explanation that she performed her past work at the sedentary rather than light exertional level as the work is classified in the Dictionary of Occupational Titles ("DOT"); and (3) did not fully develop or explain the past work determination as required by SSR 82-62.[3]  (R. 15, Pl.'s Mem. at 13-15.)  Cindy says she cannot perform past work because of pain, ineffective treatment, medication side effects, crying episodes, memory issues, an

---

[3]   The Commissioner replaced SSR 82-62 with SSR 24-2p as of June 22, 2024. Because SSR 24-2p was not yet in place at the time of the ALJ's decision in this case, SSR 82-62 applies here.  SSR 82-62 "state[s] the policy and explain[s] the procedures for determining a disability claimant's capacity to do past relevant work."

10

inability to type for extended periods, and the significant mental and physical deficits that Dr. Grandinetti reported. (Id. at 14-15.) Cindy notes that if she cannot perform her past work, she is entitled to benefits under the Medical-Vocational Guidelines because of her advanced age and lack of transferable skills. (Id. at 14.) But again, the court finds no error with the ALJ's assessment.

The court first notes that Cindy challenges only the frequent hand-use restriction of her physical RFC and the ALJ's failure to account for her alleged mental deficits in her mental RFC. (See id. at 3 ("*Plaintiff only takes issue here with the upper extremity limitations and the ALJ's failure to account for Plaintiff's mental impairments or deficits.*") (emphasis in original).) The court discussed those concerns above and declines to address any intended challenge to the RFC itself in the context of the ALJ's step-four analysis.

As for Cindy's other contentions, they lack merit. For starters, Cindy testified at the hearing about her job functions, specifically that she engaged in "office work" like "put[ting] in orders, answer[ing] the phone, [and] get[ting] the mail," during which she sat "most of the time" and lifted nothing heavier than 10 pounds. (A.R. 37-38.) Given this testimony, the VE correctly described her work as that of an administrative clerk, light as classified by the DOT, but sedentary as she performed it. (Id. at 58); 20 C.F.R. § 404.1567(a) (defining "sedentary work" as involving lifting "no more than 10 pounds at a time" and mostly sitting with "occasional" standing or walking). Neither Cindy nor her attorney challenged this classification at the hearing.

11

And when the ALJ asked the VE whether an individual with Cindy's vocational background and the RFC he ultimately assessed could perform Cindy's past work as she performed it, the VE responded, "yes." (A.R. 58-59.) This conclusion also was not contested at the hearing and—together with the VE's testimony classifying Cindy's past work—amounts to substantial evidence upon which the ALJ could and did rely to satisfy the requirements of SSR 82-62, SSR 96-8p, and step four in general. *See Packham v. Astrue*, 762 F. Supp. 2d 1094, 1106 (N.D. Ill. 2011) ("Ultimately, given the VE's testimony and the ALJ's valid RFC determination, substantial evidence supported the ALJ's step-four finding.").

## Conclusion

For the foregoing reasons, Cindy's remand request is denied, and the Commissioner's decision is affirmed.

        **ENTER:**

        _____
        **Young B. Kim**
        **United States Magistrate Judge**